**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| JENNIFER H.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:25-cv-02910-MGB<br><br><br><br><br>**ORDER** |

In accordance with the provisions of 28 U.S.C. § 636(c); Rule 73 of the Federal Rules of Civil Procedure; and Local Civil Rule 73.02(B)(1), the parties in this case have consented to have a United States Magistrate Judge conduct all proceedings. Based upon this consent, the case was referred to the undersigned for final disposition by Order of the Honorable Mary Geiger Lewis, United States District Judge, on April 24, 2025. (*See* Dkt. No. 6.)

Plaintiff Jennifer H. ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). For the reasons set forth herein, the Court **ORDERS** that the Commissioner's decision should be **REVERSED**, and the case **REMANDED** for further proceedings consistent with this Order.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 45 years old on her alleged disability onset date, November 7, 2018. (R. at 19, 33, 75.) Plaintiff claims disability due to, *inter alia*, chronic migraines, generalized anxiety disorder, depression, post-traumatic stress disorder, back pain, and arthritis. (R. at 76.) Plaintiff has a high school education and past relevant work as a human resources administrator (R. at 33, 68.)

Plaintiff filed her application for DIB on December 16, 2020. (R. at 17, 97–98.) Her application was denied initially and on reconsideration. (R. at 17, 97–98.) After a hearing before an Administrative Law Judge ("ALJ") on November 30, 2023, the ALJ issued a decision on February 21, 2024, in which the ALJ found that Plaintiff was not disabled. (R. at 17–74.) The Appeals Council declined Plaintiff's request for review (R. at 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

(2) The claimant has not engaged in substantial gainful activity since November 7, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: hallux rigidus of the left foot, right foot neuroma, degenerative disc disease of the lumbar spine, carpal tunnel syndrome, migraines, anxiety, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as

> defined in 20 CFR 404.1567(b) except that the claimant can never climb ladders, ropes, and scaffolds; the claimant can frequently balance, stoop, kneel, crouch, and crawl; the claimant can frequently reach, handle, finger, and feel; the claimant should avoid concentrated exposure to hazards, noise, and fumes, odors, dusts, gas[]es, and poorly ventilated areas; the claimant can never be exposed to flashing lights; and the claimant can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting, or more than occasional contact with the public.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on August 15, 1973, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).
>
> (8) The claimant has at least a high school education (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from November 7, 2018, through the date of this decision (20 CFR 404.1520(g)).

(R. at 17–34.)

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d

632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly support the residual functional capacity ("RFC") determination. (*See generally* Dkt. No. 8.) More specifically, Plaintiff contends, *inter alia*, that the ALJ improperly evaluated the opinion evidence of record. (*Id.*) In response, the Commissioner asserts that the decision is supported by substantial evidence and free from legal error. (*See generally* Dkt. No. 9.) The Commissioner argues it should therefore be affirmed. (*Id.*) Upon review, the undersigned agrees with Plaintiff and finds that the decision must be **REVERSED**, and the case **REMANDED** for further proceedings.

### I. Legal Standard

A claimant's RFC, which represents "the most [she] can still do despite [her] limitations," is determined by assessing all relevant evidence in the case record, including "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1), (a)(3); *see also Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. § 404.1545(a)(3).

Social Security Ruling 96-8p further requires that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) (noting that the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Moreover, the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis

(i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by "a narrative discussion describing [] the evidence" that supports it. *Dowling*, 986 F.3d at 387 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)) (alteration in original); *see Woods*, 888 F.3d at 694 (explaining that "the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion") (internal quotation marks omitted) (emphasis in original). Thus, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311.

The medical opinions in the record are among the evidence the ALJ must consider and reconcile with the RFC assessment. 20 C.F.R. § 404.1520c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the Social Security Administration has enacted substantial revisions to the regulations governing the evaluation of opinion evidence and prior administrative medical findings.[2] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or prior administrative findings and need not give special deference to treating source opinions. 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

---

[2] 20 C.F.R. § 416.920c has replaced the "Treating Physician Rule" for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); s*ee also Marshall v. Berryhill*, Case No. 16-cv-00666-BAS-PCL, 2017 WL 2060658, at *3 n.4 (S.D. Cal. May 12, 2017).

opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources"). Instead, ALJs consider medical opinions and prior administrative findings using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(b), (c).

Supportability and consistency are the most important of the factors, and the ALJ must explicitly address how he considered these factors in evaluating each medical opinion and prior administrative finding. 20 C.F.R. § 404.1520c(a), (b)(2). The ALJ is not required to explain the consideration of the other three factors. 20 C.F.R. § 404.1520c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical findings(s) is with evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Although these amended regulations do away with the idea of assigning "weight" to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence. The Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis*, 858 F.3d at 869 (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Arakas*, 983 F.3d at 98.

## II. ALJ's Consideration of Opinion Evidence

In considering the opinion evidence of record, the ALJ explained as follows:

In February 2021, Mary Benoit, PA-C, the claimant's treating internist, opined that the claimant experiences headaches 3-7 days/month, lasting 30 minutes to 1 hour; that the claimant's migraines caused moderate to severe decrease in function; that during times of headache, she generally would be precluded from performing even basic work activities and need a break from the workplace; that during a typical workday, the claimant will occasionally experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; and that in an 8-hour workday, she will need to take unscheduled breaks 3-5 days/month and rest for 1 hour. Finally, she opined that the claimant would likely be absent from work about four days per month (Exhibit 6F; Exhibit 31F).

This opinion is unpersuasive.

First, it is inconsistent with the notes from the claimant's treating provider, which show that the claimant is able to function and interact appropriate[ly] even with a migraine (Exhibit 20F/79-80). This opinion is also inconsistent with the claimant's reported activities, which include playing golf several times per week, swimming, hiking, and grocery shopping (Exhibit 7E/10; Exhibit 3F/14, 34; Exhibit 10F/6; Exhibit 11F/6; Exhibit 15F; Exhibit 20F/34-35, 53, 190, 231; Exhibit 22F/3).

In March 2021, James Ford, M.D., the claimant's treating psychiatrist, opined that the claimant can occasionally relate to co-workers, deal with the public, use judgment, interact with supervisors, and function independently; that the claimant could rarely deal with work stresses or maintain attention/concentration.

Dr. Ford noted that the claimant is frequently overwhelmed with anxiety and panic which impacts her ability to relate with others and impairs her ability to concentrate and pay attention. He opined that she can occasionally understand, remember, and carry out complex or detailed job instructions; occasionally maintain personal appearance and behave in an emotionally stable manner; and rarely relate predictably in social situations.

He opined that in an 8-hour workday, her mental impairments would require that she exceed the number of usual breaks and would interfere with the completion of an 8-hour workday. On average, she would likely be absent from work more than four days per month (Exhibit 8F).

That same month, Kimberly Mishriky, LSCW, rendered a similar opinion (Exhibit 9F).

In July 2023, Dr. Ford opined that the claimant could occasionally relate to co-workers, use judgement, interact with supervisors, or function independently; rarely

deal with the public, deal with work stresses, or maintain attention/concentration; remember, or carry out complex job instructions; occasionally understand, remember, or carry out detailed job instructions; occasionally behave in an emotionally stable manner; and rarely relate predictably in social situations. He further opined that in an 8-hour workday, mental impairments would require that the claimant exceed the number of usual breaks and would interfere with the completion of an 8-hour workday. On average she would likely be absent from work more than four days per month (Exhibit 33F).

These opinions are not persuasive. They are not supported by Dr. Ford's own treatment notes, which typically show that the claimant has intact memory, intact attention/concentration, and good insight and judgment (Exhibit 13F; Exhibit 19F; Exhibit 26F; Exhibit 41F). They are also inconsistent with the findings of other providers, which show fairly normal mental status examinations (Exhibit 3F/12, 16, 27-28, 32, 37; Exhibit 5F/6, 19; Exhibit 10F/17, 32, 37, 43, 46; Exhibit 12F/6, 8; Exhibit 20F/35, 45, 77, 85, 165, 191, 202; Exhibit 22F/7, 13; Exhibit 23F/5, 37; Exhibit 27F/4, 11). Finally, these opinions are inconsistent with the claimant's reported activities, which include a number of tasks requiring attention and social interaction (Exhibit 7E; Exhibit 10F; Exhibit 11F; Exhibit 15F; Exhibit 19F; Exhibit 22F).

In April 2021, Wayne Paulekas, M.D., opined that the claimant would require ongoing treatment for PTSD and anxiety (Exhibit 10F; Exhibit 32F). This opinion is persuasive, as it is consistent with her treatment records showing ongoing treatment [(]Exhibit 13F; Exhibit 19F; Exhibit 26F; Exhibit 41F).

In July 2023, Kolyse Carver, PA-C, the claimant's treating neurologist, opined that during times of headache, the claimant would generally be precluded from performing even basic work activities and need a break from the workplace and that the claimant would likely be absent from work about four days per month (Exhibit 34F).

This opinion is not persuasive because it is not supported by her own treatment notes, which show improvement with medications and unremarkable neurologic examinations (Exhibit 18F/11, 15, 19, 23, 28, 33; Exhibit 20F/165, 191, 203, 221, 227, 233; Exhibit 22F/4, 9). It is also inconsistent with notes from the claimant's treating provider, which show that the claimant is able to function and interact appropriate[ly] even with a migraine (Exhibit 20F/79-80).

In February 2021, Dr. Ford opined that the claimant could not lift more than 10 pounds due to sciatic pain. He also opined that the claimant's prognosis was guarded with respect to her mental impairments due to the duration and frequent recurrence of symptoms (Exhibit 7F).

This opinion is partially unpersuasive. His opinion regarding the claimant's ability to lift is not supported by or consistent with the record. Dr. Ford is the claimant's

treating psychiatrist and has not examined or treated the claimant with respect to her back or sciatic pain. Moreover, his notes typically show that the claimant has normal strength, tone, gait, and motor activity (Exhibit 13F; Exhibit 19F; Exhibit 26F; Exhibit 41F).

With respect to his prognosis regarding her mental health, this is more persuasive. The claimant does have a longstanding history of mental health treatment with reports of continuing anxiety. However, as noted in detail above, her symptoms are improved with medication.

In June 2021, Rebecca L. Sorrow, Ph.D., the consultative psychologist, opined that the claimant was capable of the concentration and focus needed to perform simple tasks and follow basic instructions but that her PTSD and panic symptoms would likely interfere with her ability to complete complicated tasks or follow complex instructions in a work situation. She further opined that the claimant had difficulty adapting to change and may not handle stress well in a work situation. Finally, she opined that the claimant was capable of managing her funds appropriate[ly] (Exhibit 15F).

This opinion is persuasive. It is supported by the objective findings found in Dr. Sorrow's report. It is also consistent with the claimant's reported activities (Exhibit 7E; Exhibit 15F), as well as the mental status examinations performed by her treating providers, which are fairly normal (Exhibit 3F; Exhibit 5F; Exhibit 10F; Exhibit 13F).

At the initial level, the State agency medical consultant determined that the claimant could perform medium work with frequent postural maneuvers, and avoidance of concentrated exposure to noise (Exhibit 1A). At the reconsideration level, the consultant made the same determination but also found that the claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Exhibit 4A).

These determinations are partially persuasive. They are consistent with the objective findings of record showing that the claimant typically has normal gait, strength, and sensation. However, the undersigned finds the claimant more limited to light than they determined at medium based on the new evidence regarding her right foot neuroma, left hallux rigidus, carpal tunnel syndrome, and degenerative disc disease (Exhibit 36F; Exhibit 37F; Exhibit 39F; Exhibit 40F).

At both levels, the peer review State agency psychological consultant determined that the claimant could perform simple instructions, simple unskilled tasks, no on-going interaction with the public, and a routine work setting (Exhibit 1A; Exhibit 4A).

These determinations are persuasive. They are consistent with the claimant's treatment history, which shows overall improvement in her mental health

> symptoms with medication but reports of ongoing anxiety especially in crowds and during stressful situations. They are also consistent with the objective findings showing that the claimant[] intermittently had an anxious mood and decreased attention/concentration but typically had normal mental status exams (Exhibit 13F; Exhibit 19F; Exhibit 26F; Exhibit 41F).

(R. at 29–32.)

## III. Analysis

Upon careful review, the undersigned finds that the ALJ's evaluation of the opinion evidence warrants remand. The undersigned therefore **REVERSES** the Commissioner's decision, and **REMANDS** the case for further consideration in accordance with this Order.

First, the ALJ impermissibly references certain record evidence to support his conclusions regarding the opinion evidence, without providing the full context of such evidence. (R. at 29–32.) For example, the ALJ stated that the February 2021 opinion from Plaintiff's treating internist, Mary Benoit, PA-C, and the July 2023 opinion from Kolyse Carver, PA-C, Plaintiff's treating neurologist, were not persuasive in part because they were inconsistent with treatment notes indicating that Plaintiff "is able to function and interact appropriate[ly] even with a migraine." (R. at 30–31, referencing R. at 855–56.) However, the treatment note that the ALJ references indicates that, although Plaintiff was able to "have a normal conversation [during] the appointment," she also had to lay on the exam table with the lights off and her sunglasses on for its duration. (R. at 855.) The ALJ also relied on Plaintiff's self-reported activities in discounting the February 2021 opinion from Mary Benoit, PA-C, stating, *inter alia*, that Plaintiff "play[s] golf several times per week." (R. at 30, referencing R. at 281.) However, Plaintiff actually reported that she tried to golf weekly to socialize but "struggle[s] with golfing and [has] to cancel often," in part because "golfing can sometimes bring on [a] migraine," and noted pain when golfing consistently. (R. at 281, 829.) In other treatment notes used as support by the ALJ, Plaintiff indicated she was eager to return to

playing golf but was advised that she should gradually increase her activities as tolerated. (R. at 546, 650, 810.) Further, the treatment notes to which the ALJ cites as support for Plaintiff's ability to grocery shop indicate that she cannot go grocery shopping alone, so she typically goes with her husband or a friend. (R. at 683.) Similarly, the ALJ discounted the March 2021 and July 2023 opinions of James Ford, M.D., Plaintiff's treating psychiatrist, largely based upon "fairly normal mental status examinations" noted during Plaintiff's physical exams with her internal medicine doctors, general practitioners, and orthopedists—none of whom specialize in mental health. (R. at 31, referencing R. at 402, 406, 413, 417–18, 422, 427, 504, 517, 557, 572, 577, 583, 586, 811, 821, 853, 861, 1067, 1099, 1258, 1265.)

Even setting aside the ALJ's selective references to the portions of the record that support his conclusions, the undersigned is perplexed as to how the various opinions finding that Plaintiff would miss four or more days of work each month are not consistent with or supported by the record. Indeed, the record here reflects that *four* of Plaintiff's providers made the *same* finding regarding her ability to show up for work, indicating that the providers' opinions are, in fact, consistent. *See* 20 C.F.R. § 404.1520c(c)(2) (noting that "[t]he more consistent a medical opinion(s) or prior administrative medical findings(s) is with evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

Ultimately, the ALJ erred in discounting the opinions of four separate providers—including three treating providers—who found that Plaintiff's impairments would require her to miss four or more days of work per month without providing any explanation as to why he declined to adopt that specific limitation in Plaintiff's RFC and/or supporting his determination with substantial evidence. (R. at 29–32.) Although the ALJ cited various portions of the record to

support his decision to discount these opinions, the cited records do not bear on whether Plaintiff would need to miss four or more days of work per month. (*See, e.g.*, R. at 281, 402, 406, 413, 417–18, 422, 427, 504, 517, 546, 557, 572, 577, 583, 586, 650, 683, 810, 811, 821, 829, 853, 855–56, 861, 1067, 1099, 1258, 1265.) As such, the ALJ failed to provide the requisite "logical reasoning" connecting the opinion evidence to his conclusions, and remand is warranted. *Thomas*, 916 F.3d at 311.[3]

### IV. Remaining Allegations of Error

Plaintiff also argues the ALJ erred in: (1) failing to properly evaluate her limitations in concentrating, persisting, and maintaining pace; (2) failing to properly evaluate her limitations in interacting with others; and (3) failing to properly evaluate her subjective complaints. (*See generally* Dkt. No. 8.) The undersigned declines to address these remaining allegations of error, as they may be rendered moot on remand. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*). As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration Plaintiff's remaining allegations of error.

---

[3] The undersigned finds the aforementioned errors particularly concerning in light of the vocational expert's testimony that employers typically will not tolerate any more than one absence per month on a regular and consistent basis. (R. at 72.) According to the vocational expert, missing more than four days of work per month would—in and of itself—generally eliminate all jobs in the national economy. (R. at 72.)

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED**, and Plaintiff's case is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

September 23, 2026
Charleston, South Carolina